# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

CG TECHNOLOGY DEVELOPMENT, LLC et al.,

        Plaintiffs,

vs.

ZYNGA, INC.,

        Defendant.

2: 16-cv-00859-RCJ-VCF

**ORDER**

This case arises out of the alleged infringement of eight patents. Pending before the Court are a Motion to Sever (ECF No. 19) and a Motion to Dismiss (ECF No. 21). For the reasons given herein, the Court denies the Motion to Sever and grants the Motion to Dismiss.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiff CG Technology Development, LLC ("CG Tech") is a wholly owned subsidiary of non-party CG Technology, L.P. ("CG"), which provides technology solutions for lottery, gaming, racing, and sports wagering. (Compl. ¶ 2, ECF No. 1). "[CG] specializes in providing secure, scalable, mobile technology and risk management solutions to integrated resorts, gaming partners, race and sports books, and lottery industries." (*Id.*). CG and CG Tech produce mobile phone applications for real-money and social casino gaming, as well as account-based wagering systems. (*Id.*).

/ / /

Plaintiff CG Tech is the assignee of U.S. Patent No. RE39,818, (*id.* at ¶ 19); Plaintiff Interactive Games Limited ("IG Limited") is the assignee of U.S. Patent Nos. 6,899,628, 6,979,267, 8,342,924, 7,029,394, 9,111,417, 6,966,832, (*id.* ¶¶ 31, 53, 67, 79, 89, 102); and Interactive Games LLC ("IG LLC") is the assignee of U.S. Patent No. 7,534,169, (*id.* at ¶ 42). The eight patents involve various aspects of social casino gaming, which allows users to play casino games on mobile computing devices along with other users through an online community. (*Id.* at ¶ 12). Defendant Zynga, Inc. ("Zynga") "is one of the largest developers offering social casino gaming." (*Id.* at ¶ 13). "Zynga offers various types of social casino games to users, including slot and poker games." (*Id.* at ¶ 14). Plaintiffs allege that Defendant has infringed one or more claims of the eight patents-in-suit under 35 U.S.C. § 271. Plaintiffs also allege willful infringement against Defendant.

Defendant now moves the Court under Federal Rule of Civil Procedure 21 to sever two of the three Plaintiffs from the case and require each Plaintiff to litigate its case separately. Defendant also moves the Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss each of Plaintiffs' nine claims for failure to state a claim.

## II.     MOTION TO SEVER

Defendant moves the Court under Rule 21 to sever two of the three Plaintiffs from the case, requiring each Plaintiff to litigate its case separately. Defendant argues that Plaintiffs are improperly joined because they are three distinct corporate entities with three different sets of parent entities, and they assert distinct patents from three unrelated families.

### A.     Legal Standards

Under Rule 21, district courts are vested with broad discretion in deciding whether to grant severance. Fed. R. Civ. P. 21; *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1297 (9th Cir. 2000). In patent infringement cases, the permissible joinder of accused infringers is

governed by the Leahy-Smith America Invents Act. 35 U.S.C. § 299(a). However, where, as here, an issue is raised regarding the permissible joinder of multiple plaintiffs asserting infringement, Rule 20 is still the best source of guidance. *See In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012) (quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)) ("When considering a motion to sever under Rule 21, 'courts have looked to Rule 20 for guidance.'"); *see also Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir.1997). Under Rule 20, Plaintiffs may join in a single action only if (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and[, (2)] any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). "If joined plaintiffs fail to meet both of these requirements, the district court may sever the misjoined plaintiffs, as long as no substantial right will be prejudiced by the severance." *Coughlin*, 130 F.3d at 1351.

The transaction-or-occurrence prong of Rule 20 "refers to similarity in the factual background of a claim." *Id.* at 1350. In other words, there must be a "logical relationship" between the plaintiffs' claims. *In re EMC Corp.*, 677 F.3d at 1358. "The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause[s] of action" of the various plaintiffs. *Id.*

### B. Analysis

The Court is satisfied that Plaintiffs properly joined in this action under Rule 20(a)(1). This is not a case where Plaintiffs merely allege similar harm arising from unrelated circumstances sharing only "a fact pattern but no facts." *Compare, e.g.*, *Coughlin*, 130 F.3d at 1350; *Waterfall Homeowners Ass'n v. Viega, Inc.*, 283 F.R.D. 571, 585 (D. Nev. 2012), on reconsideration, No. 2:11-cv-01498-RCJ, 2012 WL 5944634 (D. Nev. Nov. 26, 2012). Rather, Plaintiffs allege together that the same event—Defendant's development and distribution of a

single online game or single suite of very closely related games—resulted in the infringement of their various patents. Indeed, illustrative screenshots included throughout Plaintiffs' Complaint, which all appear to depict the same casino game ("Zynga Poker"), demonstrate that Plaintiffs allege all eight asserted patents have been infringed by a single game. That each patent may have been infringed by a separate function of the allegedly infringing game(s) is not enough to negate that Plaintiffs' infringement claims arise from the same transaction or occurrence. Moreover, the asserted patents are all directed to enhancing the user experience within an online casino gaming environment, especially by allowing users to play casino games on mobile computing devices in an online community. Accordingly, "this case presents common questions of fact regarding the similar features of plaintiffs' patents and whether the accused device infringes those patents." *WNS Holdings, LLC v. United Parcel Serv., Inc.*, No. 3:08-cv-275-BBC, 2008 WL 4735163, at *4 (W.D. Wis. Oct. 24, 2008).

The only directly analogous case the Court has found on the unique severance issues raised here, although not authoritative, supports the Court's conclusion. *See id.* (finding that plaintiffs' patent claims arose "out of the same transaction, namely, defendant's use of an avionic safety system that contains allegedly infringing functions"). Furthermore, the Court agrees with the analysis in *WNS Holdings*, which addressed the numerous advantages of joining the related patent claims, including streamlined discovery, preservation of party resources, and greater judicial economy. Allowing Plaintiffs to remain joined together in this action is a more efficient way of adjudicating the claims alleged.

Accordingly, the Court denies Defendant's Motion to Sever.

**III.    MOTION TO DISMISS**

On August 29, 2016, after the parties had completed briefing the instant motions, the Court issued an order granting a motion to dismiss in a closely related case. *See CG Technology*

*Development LLC v. Big Fish Games, Inc.*, No. 2:16-cv-00857-RCJ-VCF, 2016 WL 4521682 (D. Nev. Aug. 29, 2016) (order granting motion to dismiss). In *Big Fish Games*, Plaintiffs CG Tech, IG Limited, and IG LLC asserted infringement of seven of the eight patents at issue in this action (i.e., the 'RE818, '628, '169, '267, '924, '394, and '417 Patents).[1] The only patent at issue here that was not at issue in *Big Fish Games* is the '832 Patent.  In *Big Fish Games*, as here, Plaintiffs alleged their patents were infringed by defendant's social casino gaming products. Defendant Big Fish Games moved to dismiss on the grounds that (1) all seven asserted patents were patent-ineligible under the Supreme Court's two-step framework for "distinguishing patents that claim . . . abstract ideas from those that claim patent-eligible applications of those concepts," *Alice Corp. Pty. v. CLSBanklnt'l*, 134 S. Ct. 2347, 2355 (2014); and (2) Plaintiffs had failed to state a plausible claim for relief with respect to the 'RE818 Patent. Plaintiffs opposed the motion to dismiss, specifically arguing that each of the seven asserted patents were patent-eligible under the *Alice*. standard. In its order granting Big Fish Games' motion to dismiss, the Court concluded that six of the seven patents were patent-ineligible under *Alice*: '628, '169, '267, '924, '394, and '417. As for the 'RE818 Patent, the Court determined it was patent-eligible but Plaintiffs had failed under Rule 12(b)(6) to state a plausible claim upon which relief could be granted. Therefore, the Court dismissed Plaintiffs' complaint with leave to amend as to the 'RE818 Patent only.

Here, Defendant Zynga moved to dismiss under Rule 12(b)(6) but did not address *Alice* in its motion. Given the Court's prior ruling that six of the patents asserted here are patent-ineligible, the Court ordered supplemental briefing of the *Alice* standard with respect to the '832 Patent, the only patent at issue in this case for which Plaintiffs had not already briefed—and for

---

[1] With respect to the alleged infringement of these seven patents, the complaint filed by Plaintiffs in *Big Fish Games* is substantially identical to their Complaint (ECF No. 1) in this action. In both cases, Plaintiffs not only alleged the infringement of the same patents, but also the very same patent claims.

which the Court had not already analyzed—the *Alice* standard. The parties have now filed their supplemental briefs, and Defendant's motion to dismiss is ripe for decision.

### A. Legal Standards

#### a. Rule 12(b)(6) and *Twombly*

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, a plaintiff must not only specify or imply a cognizable legal theory, but also must allege the facts of the plaintiff's case so that the court can determine whether the plaintiff has any basis for relief

under the legal theory the plaintiff has specified or implied, assuming the facts are as the plaintiff alleges (*Twombly-Iqbal* review).

### b. Section 101 of the Patent Act and *Alice*

Under Section 101 of the Patent Act, an inventor may obtain a patent on "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, the Supreme Court "ha[s] long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134 S. Ct. at 2354 (quoting *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The driving concern behind this exclusionary principle is one of pre-emption—"'that patent law not inhibit further discovery by improperly tying up the future use of' these building blocks of human ingenuity." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1301 (2012)). Notably, though, "an invention is not rendered ineligible for patent simply because it involves an abstract concept. Applications of such concepts to a new and useful end . . . remain eligible for patent protection." *Id.* (citation omitted) (internal quotation marks and alterations omitted). In other words, "in applying the § 101 exception, [courts] must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Id.* (citation omitted) (internal quotation marks and alterations omitted).

Accordingly, the Supreme Court has adopted a two-step framework for determining patent eligibility under Section 101. First, a court determines whether the claim is directed to a patent-ineligible concept, such as an abstract idea. *Id.* at 2355. Next, if the patent is directed to a patent-ineligible concept, the court examines the elements of each claim "both individually and 'as an ordered combination,'" *id.* at 2355 (quoting *Mayo*, 132 S. Ct. at 1298), "to determine

whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application," *id.* at 2357 (quoting *Mayo*, 132 S. Ct. at 1294, 1298). This transformation "requires 'more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1294).

A district court may determine whether a patent is eligible under Section 101 at the dismissal stage. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348–49 (Fed. Cir. 2015) (affirming a district court's granting of a motion to dismiss based on Section 101). As noted in the Court's order granting the motion to dismiss in *Big Fish Games,* and as noted by several other courts, there is uncertainty as to whether a presumption of invalidity or a clear and convincing standard applies in Section 101 challenges. *See, e.g.*, *Esoterix Genetic Labs. LLC v. Qiagen Inc.*, 133 F. Supp. 3d 349, 355 (D. Mass. 2015); *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 109 F. Supp. 3d 916, 932 (W.D. Tex. 2015); *Communique Lab., Inc. v. Citrix Sys., Inc.*, 151 F. Supp. 3d 778, 786-87 (N.D. Ohio 2015). This Court agrees with other district courts that the most reasonable approach is to apply a clear and convincing standard to invalidity defenses under Section 101 when the analysis involves underlying factual issues but not when it involves purely legal issues, *see Communique Lab*, 151 F. Supp. 3d at 786–87; *Affinity Labs*, 109 F. Supp. 3d at 932-33, although the Court does not expect many, if any, factual issues to arise at this stage of the litigation.

**B. Analysis**

  **a. The Seven Patents Asserted in *Big Fish Games***

With respect to the '628, '169, '267, '924, '394, '417, and 'RE818 Patents, the Court adopts herein the analysis and conclusions of its August 29, 2016 order in *Big Fish Games*. *See Big Fish Games*, 2016 WL 4521682 (order granting motion to dismiss). The '628, '169, '267, '924, '394, and '417 Patents are patent-ineligible under Section 101 of the Patent Act.

### i. The 'RE818 Patent

The 'RE818 Patent is patent-eligible; however, Plaintiffs have failed to allege sufficient facts to state a claim of infringement because Plaintiffs have not identified any device that Defendant has offered for sale, sold, made, used, or imported. The 'RE818 Patent includes tangible components that are essential to its patent eligibility. Therefore, any allegation of infringement of the 'RE818 Patent must necessarily allege infringement of its tangible aspects. However, Plaintiffs do not provide any specific allegations identifying any actual physical device or component Defendant has produced, used, tested, etc. Moreover, the Court agrees with Defendant that Plaintiffs' claim that "Zynga's social casino games include an identification code . . . used by the processor to retrieve identification date and authorize game play based at least in part on an age of a player" is wholly conclusory. (Comp. ¶ 23, ECF No. 1.) The included screenshots are ambiguous and fall short of the necessary "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 663.

Therefore, the Court grants Defendant's motion to dismiss the claims of infringement of the '628, '169, '267, '924, '394, '417, and 'RE818 Patents. The Court also grants leave to amend the Complaint in order to plead additional factual content and make plausible allegations regarding infringement of the 'RE818 Patent.

### b. The '832 Patent

The '832 Patent claims "[a] system for providing game advice to a user of a gaming application compris[ing] a server and a processor remotely coupled to the server." ('832 Patent at Abstract, ECF No. 1-9 at 3.) The '832 Patent has three independent claims (Claims 1, 15, and 36) and forty-six dependent claims. (*Id.* at 20:26–24:39.) The Complaint alleges infringement of "at least Claim 1." Defendant argues that Claim 1 is patent-ineligible under *Alice*.

### i. *Alice* Step 1

Claims 1 reads:

A system for providing game advice to a user of a gaming application, comprising:
a server that:
    executes a gaming application:
    monitors a plurality of game events during the execution of the gaming application;
        and
    communicates event information associated with at least one game event;
        and
a processor remotely coupled to the server that:
    receives the event information;
    generates game advice associated with the gaming application based at least in part upon the event information, wherein the game advice comprises wager advice that is base [sic] at least in part upon event information associated with an opponent of the user in the gaming application;
        and
    presents the game advice to the user during the execution of the gaming application.

(*Id.* at 20:26–43.) In brief, this Claim involves two aspects: (1) a server that executes a game, monitors game events, and communicates event information to a remote processor; and (2) a remote processor that receives the event information, generates game advice (i.e., wager advice) based on the information, and presents the advice to the user. "The game advice provided to the user generally comprises various options, strategies, suggestions, or any other suitable information that may be used to invoke a subsequent game event." (*Id.* at 10:46–49.) Game advice may be based on "various types of information about a player, an opponent, a wager, a gaming application, or any combination thereof." (*Id.* at 10:34–38.) This information includes event information, statistics information and user profile information, which comprises, at least in part, wagering parameters and wager records. (*Id.* at 10:38–45; 21:21–28.)

Claim 1 is directed to the abstract concept of using information gathered by observing game events to determine the best options and strategies for a player's next move. The Court has

already recognized, in the context of the "enhanced services platform" patent family—which comprises the '924, '267, '628, '394, '417, and '832 Patents—that "the tasks of providing game advice, managing wagers, and matching participants . . . are . . . tasks that humans regularly perform in gaming." *Big Fish Games*, 2016 WL 4521682, at *7. In *Bilski v. Kappos*, 561 U.S. 593 (2010), the Supreme Court found that the petitioners were "seek[ing] to patent both the concept of hedging risk and the application of that concept to energy markets." *Id.* at 609. The Court held that "[h]edging is a fundamental practice long prevalent in our system of commerce and taught in any introductory finance class." *Id.* at 611 (quoting *In re Bilski*, 545 F.3d 943, 1013 (Fed. Cir. 2008). Accordingly, the concept of risk hedging is an "unpatentable abstract idea," and granting a patent on that concept "would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea." *Id.* at 611–12. Similarly, the concept of observing game events to determine the most favorable strategies for a player's next move is a fundamental practice long prevalent in gaming, and is understood—at least at a basic level—even by gaming novices.

Plaintiffs argue that "the Internet-based nature of the technology at issue" (i.e., the fact that isolated users play against each other in remote locations) is sufficient to make the game advisor patent-eligible. However, "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015); *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2358) ("Neither 'attempting to limit the use of [the idea] to a particular technological environment' nor a 'wholly generic computer implementation' is sufficient.").

Furthermore, Plaintiffs' discussion of *McRO, Inc. v. Bandai Namco Games Am. Inc.*, No. 2015-1080, 2016 WL 4896481 (Fed. Cir. Sept. 13, 2016), does little to help their case. Plaintiffs

point to *McRO* for the principle that inventions should be patent-eligible if they implement computers "to perform a distinct process to automate a task previously performed by humans." *Id.* at *8. This is a vast overgeneralization. Indeed, simply "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir.), *cert. denied*, 136 S. Ct. 701 (2015). In reality, the rules-based lip synchronization process at issue in *McRO* was found patent-eligible not merely because the claims automated conventional human tasks, but because the performance of such tasks was accomplished using "unconventional rules that relate subsequences of phonemes, timings, and morph weight sets." *Id.* at *1. In *McRO*, Defendants argued the contested patent would preempt all possible rules-based methods of automated lip synchronization. *Id.* at *5. However, the court held that the patent's claims were sufficiently limited to a specific "genus" of rules (i.e., rules with specific characteristics), and that the claims did not "simply use a computer as a tool to automate conventional activity." *Id.* at *7–8. The court stated: "It is the incorporation of the claimed rules, not the use of the computer, that improved the existing technological process by allowing the automation of further tasks." *Id.* at *8 (internal quotations marks and brackets omitted). Here, there is no limitation in Claim 1 that is analogous to the claimed rules of the patent in *McRO*. Rather, Claim 1 merely requires the "generic computer implementation" of the conventional practice of observing and analyzing game events to determine a player's best strategic options. *See Alice*, 134 S. Ct. at 2358.

Therefore, Claim 1 is directed to an abstract idea that is not patentable.

### ii.  *Alice* Step 2

The elements of Claim 1 do not contain an inventive concept that would transform the abstract idea into a patent-eligible application. The only limitations on the abstract idea are that it involves a server and a remote processor—components which are extraordinarily commonplace

in online gaming. These physical devices are used to implement the abstract idea. Accordingly, Claim 1 "merely require[s] generic computer implementation, [which] fail[s] to transform that abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2357.

As with the claims at issue in *Alice*, "each step does no more than require a generic computer to perform generic computer functions." *Id.* at 2359; *see also Intellectual Ventures*, 792 F.3d at 1371 (finding that "conventional computer components . . . operating in a conventional manner" do not confer patent-eligibility). For example, Claim 1 "do[es] not ... purport to improve the functioning of the computer itself. . . . Nor [does it] effect an improvement in any other technology or technical field." *Alice*, 134 S. Ct. at 2359. The claim does not describe the server's ability to execute a gaming application, monitor game events, and communicate event information as an improvement in server technology; rather, the claim "amount[s] to 'nothing significantly more' than an instruction to apply the abstract idea . . . using some unspecified, generic computer." *Id.* at 2360 (quoting *Mayo*, 132 S. Ct. at 1298). Claim 1 fails to do "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (alterations omitted) (quoting *Mayo*, 132 S. Ct. at 1294).

At oral argument, the parties discussed the Federal Circuit's opinion in *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, No. 2015-1845, 2016 WL 5335501, at *4 (Fed. Cir. Sept. 23, 2016), which was issued around the time briefing was completed for this Motion. The opinion further supports the Court's conclusion here. In *Affinity Labs*, the court held the patent—which claimed a system for disseminating regional broadcast content to users outside the region via the users' cellphones—was patent-ineligible under *Alice*. *Id.* at *10. The court stated that "out-of-region broadcasts have been commonplace since the late 20th century, in the form of systems delivering local radio and television broadcasts of sporting events to a national audience." *Id.* at *3. Therefore, because the challenged patent claimed "the function of wirelessly communicating

regional broadcast content to an out-of-region, not a particular way of performing that function," it was directed to an abstract idea. *Id.* Furthermore, the limitation of broadcasting content only to cellphones, which "confine[d] the abstract idea to a particular technological environment," was insufficient to make the claims any less abstract. *Id.* at *4 ("The Supreme Court and this court have repeatedly made clear that merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract."). Similarly, the '832 Patent is not "directed to the solution of a technological problem, nor is it directed to an improvement in computer or network functionality." *See id.* at *6. Rather, like the out-of-region broadcasting patent in *Affinity Labs*, the '832 Patent claims a general concept—that of observing and analyzing game events to generate game advice—through the use of conventional devices—a server and a remote processor—and fails to offer any "technological means of effecting that concept." *See id.*

Accordingly, Claim 1 is directed to an abstract idea that does not contain an inventive concept sufficient to transform it into a patent-eligible application. The Court finds that Claim 1 is representative of the other claims because they are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation omitted). Also, Plaintiffs have not identified any claims that would not be fairly represented by Claim 1. *See id.* The '832 Patent is patent-ineligible.

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Sever (ECF No. 19) is DENIED.

IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 21) is GRANTED, with leave to amend within 30 days of the date of this order.

IT IS SO ORDERED 13th day of October, 2016.

_____
ROBERT C. JONES
United States District Judge